# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANGELITA ANTUNEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case No. 2:21-cv-00160 |
| | § | |
| POAT ACUTE MEDICAL, LLC, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Angelita Antunez files this Original Complaint against Defendant Post Acute Medical, LLC, and shows as follows:

### PARTIES

1. The plaintiff is Angelita Antunez. She is an individual and resident of Nueces County, Texas.

2. The defendant is Post Acute Medical, LLC ("the defendant"). It is a private corporation doing business in and located in Nueces County, Texas. The defendant may be served with process by personal service on its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  It presents a federal question because it arises under 29 U.S.C. § 2601, a federal statute.

## VENUE

4.      Pursuant to 29 U.S.C. § 1132(e)(2), venue for this suit is proper in this district and division because it is the district and division where the alleged events occurred.

## FACTS

5.      The defendant represents that its hospital in Corpus Christi is a part of the Post Acute Medical network dedicated to providing rehabilitation services and long-term acute care for individuals with a wide variety of conditions.  The defendant further represents that it serves patients recovering from neurological disorders, orthopedic conditions, cardiopulmonary conditions, rheumatoid conditions, peripheral vascular diseases and acute illnesses and injuries.  The defendant employees more than 50 persons within a 75-mile radius of the location where the plaintiff was employed by the defendant.

6.      The plaintiff was employed by the defendant from March 2018 to November 30, 2020.  The plaintiff was employed in the defendant's medical records department in Corpus Christi, at 345 S. Water Street.  She was an employee of the defendant for the 12-month period prior to her discharge in November 2020 and worked more than 1,250

hours of service during that period. Prior to her discharge, she had no disciplinary history and received only positive performance evaluations of her job performance.

7. Because of the COVID-19 pandemic, the defendant instituted a screening procedure in 2020 for employees entering the defendant's building each day. The process included employees answering questions on a written form, including whether they had been out of the country recently, in close contact with some who tested positive for COVID-19, had body aches, fever, cough, or congestion. Additionally, another employee of the defendant would take the temperature of each employee entering the defendant's building. The plaintiff always cooperated with the defendant's screening process and never failed it.

8. In late September 2020, the plaintiff contracted a flu virus. She timely reported the illness to the defendant and was unable to work for approximately one week. This was a serious medical condition that prevented the plaintiff from performing the essential functions of her job with the defendant. In mid/late-November 2020, the plaintiff became concerned because she had a nasal drip. Initially, she believed it was an allergic reaction to the mask she wore that covered her nose and mouth, in compliance with COVID-19 protocols in place at the time. She had no cough, fever, or body aches. During the morning hours of November 18, 2020, the plaintiff advised her immediate supervisor, Johnnie Engel, that she had an appointment to see her physician that afternoon because of

of her nasal drip. But she was not sent home early by the defendant. At her physician's office late that afternoon, the plaintiff learned that she tested positive for COVID-19. This was a serious medical condition that prevented the plaintiff from performing the essential functions of her job with the defendant. The plaintiff provided a record to the defendant from her physician—via Tiger Connect—showing the test result and that the needed to be away from work until November 30, 2020. Therefore, the plaintiff missed approximately 3 weeks of work between late September 2020 and late November 2020.

9. The plaintiff returned to work on November 30, 2020, and worked the entire day. However, early in the workday, the plaintiff was aggressively questioned by a human recourses representative about her medical symptoms. The plaintiff cooperated and answered all questions. But at the end of the day, the plaintiff was suddenly discharged from her employment by the same human resources representative because she allegedly "falsified" her answers on the screening form provided to employees who enter the defendant's building each day. The allegation is objectively false, pre-textual.

10. In discharging her from her employment, the defendant penalized the plaintiff for requesting protected leave and then being away from work under the EFMLEA and FMLA, respectively, in September and November 2020, respectively.

11. Following the unlawful discharge, the plaintiff filed a claim for unemployment benefits with the Texas Workforce Commission. Despite the defendant's effort to oppose

4

the plaintiff's claim for benefits, the plaintiff was awarded benefits. The Texas Workforce Commission rightly rejected the defendant's attempt to show that the plaintiff should be disqualified from receiving benefits because of work-connected misconduct.

## CAUSES OF ACTION

### Count 1—FMLA Retaliation

12. The plaintiff incorporates within Count 1 all of the allegations set forth in paragraphs 1-11, *supra*.

13. The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. 29 U.S.C. § 2601(b)(1) and (2). The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). The statute prescriptively provides a series of substantive rights. *See id.* The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Chaffin v. John H. Carter Co., Inc.*,

179 F.3d 316, 319 (5th Cir. 1999). When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); *see Nero*, 167 F.3d at 925.4 The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1)-(2); *see Chaffin*, 179 F.3d at 319.

14. Further, on March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act, Public Law 116-136 (CARES Act), which amends certain provisions of the EPSLA and the provisions of the FMLA added by the EFMLEA. In general, the FFCRA requires covered employers to provide eligible employees up to two weeks of paid sick leave at full pay, up to a specified cap, when the employee is unable to work because the employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19, has been advised by a health care provider to self-quarantine due to concerns related to COVID-19, or is experiencing COVID-19 symptoms and seeking a medical diagnosis. This same regulatory framework applies to an employee who is caring for a child under the age of 18. All employees are eligible for this statutory job protection regardless of the length of their employment.

15. The FMLA's general prohibitions on interference with rights and discrimination, 29 U.S.C. 2615, as well as the FMLA's enforcement provisions, 29 U.S.C. 2617, apply

for purposes of the EFMLEA.

16.     Here, the defendant is subject to the provisions of the FMLA and its pandemic-expanded provisions, respectively.  The plaintiff is eligible for the statutory job protection afforded by the FMLA and its pandemic-expanded provisions, respectively.  Under the FMLA's general provisions, the plaintiff was on a leave of absence for serious medical conditions in September 2020 because of a flu virus, and then placed on a leave of absence a second time in November 2020 because she tested positive for COVD-19, under both the general FMLA provisions and the pandemic-expanded provision of the FMLA.  These were both serious medical conditions that resulted in the plaintiff being unable to perform the essential functions of her job with the defendant.

17.     The respective leave periods resulted in the plaintiff being away from work, unproductive to the defendant for approximately 3 weeks.  The day she returned to work following the second leave period, the plaintiff was discharged from her employment by the defendant because of the leave of absence periods.

18.     The defendant's conduct caused damages to the plaintiff.  She therefore seeks reinstatement, to recover her past and future economic and non-economic damages from the defendant, her damages for mental anguish, and all other damages provided by law.  Because of the nature of the conduct; that is, being willful and intentional, the plaintiff also seeks to recover liquidated damages and/or exemplary damages from the defendant,

as provided by law. The plaintiff also seeks her costs and attorney's fees, as provided by law.

## PRAYER

19. For these reasons, Plaintiff Angelita Antunez respectfully requests that Defendant Post Acute Medical, LLC, be cited to appear herein and answer, and that upon trial of this matter, have judgment against Defendant for Plaintiff's reinstatement, damages, economic damages, non-economic damages, liquidated damages, mental anguish damages, exemplary damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and for such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

s/Jon D. Brooks
Jon D. Brooks
Attorney-in-Charge
Federal ID 24936
State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
jbrooks@brooksllp.com

**Attorneys for Plaintiff Angelita Antunez**